**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**AMERICAN EXPRESS CENTURION BANK, Defendant.**

**Civ. A. No. 90–466–JRR.**

United States District Court, D. Delaware.

March 4, 1991.

---

218

William C. Carpenter, Jr., U.S. Atty., and Kent A. Jordan, Asst. U.S. Atty., Wilmington, Del. (Issie L. Jenkins, Acting Regional Atty., Carmen R. Matos, Supervisory Trial Atty., and Valerie Toohey O'Dell (argued), Trial Atty., E.E.O.C., Philadelphia, Pa., of counsel), for plaintiff.

David H. Williams, (argued), and Peter C. Campbell, of Morris, James, Hitchens & Williams, Wilmington, Del., for defendant.

## OPINION

ROTH, District Judge.

### I. INTRODUCTION

Now before the court is an application by the Equal Employment Opportunity Commission ("the EEOC" or "the Commission") for an order to show cause why a subpoena should not be enforced against the respondent, American Express Centurion Bank ("the Bank"). The subpoena at the center of this dispute seeks information in furtherance of an investigation of a charge filed by Vincent G. Sanborn, a former bank employee, under the Age Discrimination in Employment Act of 1967 ("the ADEA"). The Bank does not, with one exception, claim that the subpoena requests irrelevant information. Nor does the Bank assert that the charge was untimely. Rather, the Bank feels that it need not comply with the subpoena because Sanborn had, before filing his charge with the EEOC, signed a release purportedly waiving all claims, including ADEA claims, he might have against the Bank. In the Bank's view, the release has rendered the charge invalid, and the EEOC therefore lacks jurisdiction

to pursue the investigation. This state of affairs forces us to answer a novel question: Where the EEOC is investigating an individual charge of age discrimination, but has not yet filed a complaint based on that charge, may an employer refuse to respond to an EEOC subpoena simply because the employer may, in a later adversarial proceeding, assert a defense based on the employee's alleged waiver of ADEA claims? We hold that it may not.

## II. FACTS

Vincent Sanborn filed a charge with the EEOC on September 28, 1989. In that charge he asserted that the Bank terminated him from his position as Manager of Business Requirements and Data Operations because of his age, which was 42 years. On September 29, 1989, the EEOC sent notice of this charge to the Bank, requesting at the same time that the Bank submit a position statement to the EEOC. On October 25, 1989, the Bank stated its position that Sanborn had been terminated for reasons unrelated to his age. In addition, the Bank asserted that the release Sanborn had signed was valid under Third Circuit case law and that his claim was therefore barred. On April 20, 1990, an EEOC investigator wrote to an attorney for the Bank and asked that the Bank supply information relevant to an investigation of the charge. The Bank did not respond to the request.

On May 11, 1990, the EEOC served upon the Bank a subpoena *duces tecum* requesting nine categories of information, eight of which are conceded to be relevant to the investigation of the charge.[1] Instead of complying with the subpoena, the Bank sent the EEOC a petition to quash it. This petition repeated the Bank's view that the release signed by Sanborn barred his ADEA charge. It therefore requested that the EEOC determine, before conducting further investigation, whether the release was valid. This would, in the Bank's view, not only comport with "well settled case law in this Circuit," but would also "economize the time and resources of all parties involved." When asked again to comply, counsel for the Bank refused to budge. As a result, the EEOC came to this Court on August 1, 1990, with an application for an order to show cause why the subpoena should not be enforced. We directed the Bank to submit a brief on the subject and scheduled oral argument, but noted that the hearing would not address the legal effect of Sanborn's release of claims

---

1. In sum, the subpoena seeks information and documentation:

—which supports the reasons for Sanborn's discharge, including investigative reports.

—containing the names, dates of birth, and positions of persons recommending and or making final decisions to discharge Sanborn, and the names and dates of birth of all witnesses to each event which contributed to the discharge.

—relating to the discharge of any person who was discharged during the period July 18, 1988 to July 18, 1989 from a management position, including names, dates of birth, dates of hire, dates of discharge, reasons for discharge, and disciplinary records prior to discharge, as well as the names, dates of birth, and positions of the person recommending and/or making final decision to discharge.

—explaining in detail the Bank's discharge policy and procedures in effect during July 18, 1988 to July 19, 1989.

—explaining in detail the qualifications, skills, experience, and duties/responsibilities for the position held by Sanborn at the time of his discharge, and explaining how he proved to be deficient in meeting these factors and duties.

—showing all current employees in the same position or job classification Sanborn held when discharged. Such employees are to be identified by name and date of birth.

—showing the names, dates of birth, and dates of hire of any employee in Sanborn's former position hired since July 18, 1988.

—pertaining to waivers and releases signed by employees who were terminated between July 18, 1988 and July 18, 1989, and showing that those persons were not coerced or did not sign the waivers in exchange for invalid consideration, or that the waivers were not created in an attempt to prevent employees from filing employment charges when discriminated against.

—containing the Bank's written position on each of the allegations of the charge.

In its petition to quash the subpoena and in its brief, the Bank argues that information pertaining to waivers and releases signed by persons other than Sanborn is not relevant. As noted below, we conclude that this information is relevant, and order its production.

against the Bank.[2]

## III. DISCUSSION

### A. *Applicable Law*

#### 1. Administration and Enforcement of the ADEA

The issue presented here concerns a small but important aspect of the ADEA enforcement scheme set up by Congress and administered by the EEOC. It is therefore appropriate to outline briefly the procedures that are set in motion when an ADEA charge is filed.

Under the ADEA, an aggrieved individual employee may file with the EEOC a charge that his or her employer engaged in unlawful age discrimination. 29 U.S.C. § 626(c). The purpose of the charge "is prospective—to initiate the investigation, and to set out the bounds of the unlawful employment practices that the Commission suspects it may ultimately discover." *E.E. O.C. v. Shell Oil Co.*, 466 U.S. 54, 89, 104 S.Ct. 1621, 1640, 80 L.Ed.2d 41 (1984) (O'Connor, J., concurring and dissenting). The charge must be made in writing and should contain a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1626.8(a)(3) (1990). Nevertheless, the charge is sufficient if it includes a written statement naming the prospective respondent and generally alleging the discriminatory acts. 29 C.F.R. §§ 1626.6, 1626.8(b) (1990). What is more, a charge may be amended to clarify or amplify allegations made in it. 29 C.F.R. § 1626.8(c). Once a charge is filed, the EEOC must promptly notify the respondent named in it. 29 U.S.C. § 626(d).

After providing appropriate notice to the employer, the EEOC investigates the charge to determine whether there exists reasonable cause to believe that it is true. To this end, Congress gave the agency broad investigatory powers:

> [T]he Commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person, partnership, or corporation being investigated or proceeded against ...

15 U.S.C. § 49. If investigation establishes that the charges are justified, the Commission must "attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of [the ADEA] through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b). If this effort fails, the EEOC or the individual charging party may bring a lawsuit.

A key tool in the EEOC's investigation of a charge is the subpoena. 15 U.S.C. § 49 ("[T]he Commission shall have the power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to a matter under investigation."); 29 C.F.R. § 1626.16 (1990). Regulations promulgated by the Commission state that such a subpoena may require production of documents within the scope of its investigation. 29 C.F.R. § 1626.16(a)(2)(3) (1990). The same regulations provide that "[a] subpoena issued by the Commission or its designee pursuant to the Act is not subject to review or appeal." 29 C.F.R. § 1626.16(c) (1990).[3]

#### 2. The Role of the Courts in Administrative Investigations

The Supreme Court has provided clear guidance on the role of the courts in administrative investigations. As it commented in *United States v. Morton Salt Co.*, 338

---

**2.** We do not today address the legal effect of this release under *Coventry v. United States Steel Corp.*, 856 F.2d 514 (3d Cir.1988), which held that, subject to a close evaluation of various factors that are indicia of "knowing" and "willful" waiver, employees may execute valid waivers of their ADEA claims. *Id.* at 518. At oral argument, counsel for the Bank stated that he had not seen any case law discussing the language contained in the release signed by Sanborn.

**3.** If the recipient of the subpoena does not comply, the EEOC may, as in this case, ask any federal court to order compliance. 15 U.S.C. § 49. Any failure to obey such an order may be punished as contempt. 15 U.S.C. § 50.

U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950), an administrative agency is entitled to broad deference in investigating possible violations of law because it

> has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is a probable violation of the law.

*Id.* at 642–643, 70 S.Ct. at 364. The Court has acknowledged that such investigations can be expensive and time consuming. *Oklahoma Press Publ. Co. v. Walling,* 327 U.S. 186, 213, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946). Nevertheless, the Court has emphasized the critical importance of ensuring that investigations not be stopped "at the threshold of inquiry." *Id.* Premature interruption of investigation "would render substantially impossible [the] effective discharge of the duties of investigation and enforcement which Congress has placed upon [the agency]." *Id.*

 ▐ In light of these concerns, the federal courts are and should be most cautious about interfering with the investigative power delegated by Congress to agencies like the EEOC. The agencies, not the courts, are responsible for determining in the first instance through preliminary investigation the coverage of the statutes they must administer. *E.E.O.C. v. South Carolina Nat'l Bank,* 562 F.2d 329, 332 (4th Cir.1977) (enforcement of subpoena in Title VII case). Therefore, the courts should intervene only in the most unusual and compelling circumstances.

 ▐ The courts must be equally deferential with regard to the EEOC's use of subpoenas in investigating the truth of age discrimination charges. Three years before the passage of the ADEA, the Supreme Court outlined what an administrative agency must show in order to have its subpoena enforced. The agency need not meet any standard of probable or reasonable cause. *United States v. Powell,* 379 U.S. 48, 57, 85 S.Ct. 248, 254, 13 L.Ed.2d 112 (1964). Rather, the agency must show only

> that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [agency's] possession, and that the administrative steps required ... have been followed....

*Powell,* 379 U.S. at 57–58, 85 S.Ct. at 255. Just last year, the Supreme Court distilled these requirements when asked to intervene in an EEOC investigation of a claim of discrimination on the basis of race, sex and national origin. In *University of Pennsylvania v. E.E.O.C.,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), the high Court commented that

> when a court is asked to enforce a Commission subpoena, its responsibility is to "satisfy itself that the charge is valid and that the material requested is 'relevant' to the charge ... and more generally to assess any contentions by the employer that the demand for information is too indefinite or has been made for an illegitimate purpose." It is *not* then to determine "whether the charge of discrimination is 'well founded' or 'verifiable.'"

493 U.S. at ——, 110 S.Ct. at 583 (quoting *E.E.O.C. v. Shell Oil Co.,* 466 U.S. at 72, n. 26, 104 S.Ct. at 1632 n. 26) (emphasis added). *Compare United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 574 (3d Cir.1980) (administrative subpoena enforced if inquiry is within agency's authority; if demand is not too indefinite; and if information is reasonably relevant). If the charge is valid and the material requested is relevant, the burden shifts to the employer to come forward and show that the EEOC is somehow abusing its investigative authority. *See In re E.E.O.C.,* 709 F.2d 392, 400 (5th Cir.1983) (en banc) (forbidding counter-discovery on possible grounds for resisting subpoena). At that point, the

court's role is sharply limited. *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 980 (3d Cir.1988), *aff'd*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). A district court should entertain a challenge to an otherwise valid subpoena only if "the person to whom the subpoena is directed raises a substantial question that the court's process will be abused by enforcement." *E.E.O.C. v. South Carolina National Bank*, 562 F.2d 329, 332 (4th Cir. 1977) (rejecting notion that EEOC must determine timeliness of charge before investigation) (citing *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)). *Compare In re E.E.O.C.*, 709 F.2d at 400 (requiring substantial demonstration of abuse based on meaningful evidence).

## B. *Discussion*

We now analyze the contentions of the Bank in light of these standards. In doing so, it is worth remembering that at this stage the EEOC and the Bank are not adversaries. In addition, we will not now give any consideration to the issue of whether the waiver will bar any claims pursued after the investigation has been completed.

The Bank asks us to interfere with the EEOC investigation because, it claims, the underlying charge is invalid, and thus destroys the EEOC's jurisdiction to investigate. We must determine, therefore, whether the possibility that the Bank may have a waiver defense to a future lawsuit prevents the Commission initiating an investigation pursuant to Sanborn's complaint to it. We will consider first whether Sanborn's charge is a valid one under the regulations and, even if it is, whether the possibility that Sanborn has waived his claim against the Bank still prevents an investigation by the Commission. We hold that the charge is valid and that enforcement of the subpoena as a part of the investigation is entirely proper.[4]

### 1. Validity

■ The Bank first argues that the charge made by Sanborn is invalid. A charge is valid if it is in writing and generally alleges the discriminatory acts of the named respondent. *See* 29 C.F.R. §§ 1626.-6, 1626.8. There is no dispute here that Sanborn's charge met all of these requirements. In these circumstances, we have no choice but to conclude that the charge meets Congress' test of validity.

■ The Bank nevertheless maintains that the charge is invalid because Sanborn signed a waiver. To us, this is tantamount to maintaining that the EEOC's jurisdiction to investigate a charge of age discrimination depends upon the absence of a possible affirmative defense to the charge. In light of the jurisprudence developed in the area of agency investigations, we find that it would be inappropriate for us to add another prerequisite to the exercise of EEOC jurisdiction. In general, a party may not defeat an agency's authority to investigate by raising what could be a defense if the agency subsequently decides to bring an action against the party. *E.E.O.C. v. Delaware State Police*, 618 F.Supp. 451, 453 (D.Del.1985) (Schwartz, C.J.) (refusing to determine merits of statute of limitations defense that could be raised in response to hypothetical future complaint by EEOC).

Our conclusion in this regard is supported by Supreme Court precedent. In *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943), for example, the Secretary of Labor began a purely administrative investigation into whether a corporation had violated a ruling made by her under the Walsh–Healey Public Contracts Act. The Walsh–Healey Act provided that certain government contracts had to stipulate that the contractor would pay at least a minimum wage set by the Secretary of Labor and would not allow its employees to work overtime unless the employer had obtained an exemption from the Department. *Id.* 63 S.Ct. at 340.

Under the authority delegated by Congress to her, the Secretary issued a series

---

**4.** Our resolution of these issues in no way of course affects the ability of the Bank to raise the defense of Sanborn's waiver if a later suit is filed.

of rulings on these subjects. *Id.* 63 S.Ct. at 340–42.[5] The Secretary then began an investigation of violations taking place at plants that were owned by Endicott–Johnson but not named in the contract between the company and the government. When Endicott–Johnson refused to obey a subpoena requesting production of documents about manufacturing at these plants, the Secretary went to a federal district court to enforce its subpoena. *Id.* 63 S.Ct. at 342. There Endicott–Johnson argued that, because its contract did not mention the plants in question, the Secretary lacked the authority to rule that the Act applied to those plants. *Id.* It also argued that the requested documents were irrelevant. *Id.* The Supreme Court, affirming the Second Circuit, held that the Secretary of Labor had acted properly in ruling as she did and in conducting the investigation that led to the subpoena. *Id.* 63 S.Ct. at 342–43. Finding that the district court had improperly "disable[d]" the Secretary, it ordered production of the documents. *Id.* 63 S.Ct. at 343.

After deciding that the ruling and investigation were proper, the Court turned to an issue that is important here: whether a district court should consider a respondent's affirmative defenses to a future complaint that might be filed after an investigation. Endicott–Johnson had offered no less than four defenses, including arguments based on the meaning of the contract and the Walsh–Healey Act and on the retroactive effect of one of the Secretary's rulings. *Id.* 63 S.Ct. at 343 n. 11. The Court quickly undercut this strategy: "The petitioner has advanced many matters that are entitled to hearing and consideration in its defense against the administrative complaint, but they are not of a kind that can be accepted as a defense against the subpoena." *Id.* 63 S.Ct. at 343. Thus, the Court made it plain that it is inappropriate to interfere with an administrative investigation by exploring substantive defenses to a later adversarial proceeding. *See also E.E.O.C. v. Children's Hospital Medical Center of Northern California,* 719 F.2d

1426 (9th Cir.1983) (en banc) (target of investigation may not raise res judicata defense to avoid compliance with subpoena).

In light of *Endicott Johnson* and the other cases we have reviewed, we conclude that the absence of an affirmative defense to an ADEA-based lawsuit is not what the Supreme Court has called a "jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC." *Shell Oil,* 466 U.S. at 65, 104 S.Ct. at 1629. *See generally Children's Hospital,* 719 F.2d at 1430 (collecting cases). If we were to fashion another jurisdictional prerequisite, any party suspected of violating the ADEA could essentially circumvent the investigation and head directly into court, thus halting the EEOC's efforts to determine whether there is reasonable cause to believe that an ADEA charge is true. This would have the unwelcome—and indeed forbidden—effect of killing the investigation at the threshold of inquiry. *Oklahoma Press Publ. Co. v. Walling,* 327 U.S. 186, 213, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946). Such premature challenge to the investigatory power delegated by Congress to the EEOC would force the courts to determine the merits of the charge and its defenses well before such intervention is necessary. The EEOC, not this court, is charged by Congress with the duty of investigating and, if possible, eliminating unlawful practices. Should the EEOC or an individual complainant actually sue an employer, a federal district court may, of course, face and resolve many of the same issues. But we decline to accept the Bank's invitation to alter the present distribution of the burdens shouldered during an EEOC investigation.

Even though the charge filed by Sanborn meets the relatively simple test of validity, the Bank urges us to follow the lead of another court and make the test more stringent. In *E.E.O.C. v. Ocean City Police Department,* 820 F.2d 1378 (4th Cir.1987), *judgment vacated on other grounds,* 486 U.S. 1019, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988), a bare majority of the Fourth Cir-

---

5. The Walsh–Healey Act also required the Secretary to investigate alleged violations of the Act

and associated rules and regulations and to reach findings of fact.

cuit judges sitting en banc held that "in a proceeding to enforce a subpoena issued by EEOC, the district court should review the underlying charge and deny enforcement if the charge shows on its face that it is untimely." *Id.* at 1382. In other words, the court held that the EEOC lacks jurisdiction to investigate such a charge. In the present case, the Bank would have us examine the enforceability of Sanborn's alleged waiver in the same way the *Ocean City* court examined timeliness. For the reasons that follow, we decline to do so.

In *Ocean City*, policeman Keith Wright was fired 251 days before filing a charge of racial discrimination with the EEOC. *Id.* at 1379. The EEOC began an investigation and served Wright's former employer, the Ocean City Police Department, with a subpoena that requested production of documents. *Id.* The Department refused to comply and filed an unsuccessful petition to quash the subpoena. After losing an administrative appeal on the issue, the Department continued to refuse to comply, thus forcing the EEOC to ask a federal district court to order compliance.

At a hearing on the enforcement problem, the Department argued that Wright's EEOC charge was not timely and that the EEOC lacked authority or jurisdiction to investigate the charge. The charge was, in the eyes of the Department, invalid. *Id.* at 1379. The district court held that the charge had been timely filed, and the Department appealed. *Id.* A three-judge panel affirmed the enforcement of the subpoena, but not because the charge was timely. Rather, the panel held that the district court should not have considered the timeliness issue in the first place. *E.E. O.C. v. Ocean City Police Department*, 787 F.2d 955, 957 n. 4 (4th Cir.1986). The Department petitioned for and received rehearing en banc.

As noted above, the Fourth Circuit, sitting en banc, finally held that the EEOC lacked authority to investigate a charge that shows on its face that it was untimely because such a charge is invalid. *Id.* at 1380. In reaching this decision, the court first noted that the EEOC had admitted

that the charge filed by Wright would be barred in an adversarial proceeding as untimely under Fourth Circuit case law. *Id.* at 1380 & n. 5. Stressing that Congress had not given the EEOC unlimited investigatory powers, the court stated that "[t]he only legitimate purpose for an EEOC investigation is to prepare for action against an employer charged with employment discrimination, or to drop the matter entirely if the Commission finds the charge to be unfounded." *Id.* at 1380. The court concluded that the district court would merely have to apply settled law (i.e., untimely charges are barred) to an undisputed fact (i.e., Wright's charge was untimely) and no more. *Id.* at 1381. This was, in other words, a "distilled and purely legal question of statutory construction." *Id.* at 1382. The court buttressed its reasoning by pointing out that no discovery would be necessary and that refusing enforcement would meet Congress's desire to limit EEOC investigatory authority, relieve the employer of "a completely unwarranted burden," and free the EEOC to pursue timely charges. *Id.* The court also found that none of the administrative efficiency concerns voiced by the EEOC applied and that judicial deference to the agency would gain "nothing." *Id.* The court thus endorsed judicial scrutiny of the charge that underlay the subpoena with regard to the issue of timeliness.

In our view, the reasoning of the *Ocean City* court does not require or compel us to examine the merits of the Bank's waiver defense. In fact, it leads us to do the contrary. For example, the *Ocean City* court emphasized that the court below should have examined timeliness because the charge showed *on its face* that it was untimely. In the present case, Sanborn does not mention the waiver in his charge but, even if he did, the issue of the waiver's effect would depend upon a further factual determination. Unlike the facts before the court in *Ocean City*, those we would have to consider in weighing the legal effect of Sanborn's waiver do not appear to be neatly packaged. In other words, we cannot from the face of the charge *or* from the terms of the waiver discern without further

deliberations whether it would meet the test set out in the *Coventry* case.

We therefore return to our earlier observation that entertaining the Bank's challenge would entangle us in the merits, which we have decided we will not—and should not—do at this point, and would halt an investigation that has been mandated by Congress. This is not a case where judicial deference to the EEOC will gain "nothing." On the contrary, it will enable the EEOC to complete its inquiry into reasonable cause and will relieve this Court of unnecessary burden. Nor can we say that the burden placed on the Bank in complying with the subpoena would be completely unwarranted. This investigation appears to be in line with the purposes of the ADEA and the EEOC. We therefore must respect the agency's decision to investigate Sanborn's charge. In sum, we hold that the mere existence of a purported waiver of ADEA claims does not render a charge of age discrimination invalid for purposes of enforcing a subpoena issued by the EEOC.[6]

### 2. Relevance

Having determined that the charge is "valid," we must next consider whether the documents sought by the subpoena are relevant. The Bank concedes that eight of the nine categories of information requested in the subpoena are relevant to the charge. It is the ninth category which the Bank challenges as irrelevant. Paragraph 8 of the subpoena asks the Bank to do the following:

> Provide a copy of all waivers and releases signed by employees who were terminated between July 18, 1988 an [sic] July 18, 1989. Provide any and all supportive documentation to show that each employee was not coerced or agreed to sign these documents in exchange for an invalid consideration, or that the waiver or release was not created in an attempt to prevent employees from filing employment discrimination charges when discriminated against.

EEOC's Memorandum of Law, Exhibit A, at 2.

■■■ The investigatory powers of the EEOC should be interpreted broadly. *E.E. O.C. v. University of Pittsburgh*, 643 F.2d 983, 986, *cert. denied*, 454 U.S. 880, 102 S.Ct. 362, 70 L.Ed.2d 190 (1981). In view of this, the courts have adopted a broad construction of the term "relevant" in the context of EEOC investigations and have given the agency access to "virtually any material that might cast light on the allegations against the employer." *Shell Oil*, 466 U.S. at 68–69, 104 S.Ct. at 1631. The material requested should be produced if it "relate[s] to any matter under investigation." 15 U.S.C. § 49. We conclude that the information requested in paragraph 8 of the subpoena meets this description both as to the Bank's practice toward Sanborn and as to the light that its general employment practices may shed on its treatment of Sanborn. Therefore, the information requested in paragraph 8 must be produced.

### 3. Abuse

■■■ While the Bank does not couch its challenge to the subpoena in these terms, we must next examine whether it has raised a substantial question that this court's process will be abused if the subpoena is enforced. We must review the totality of the circumstances presented. *S.E.C. v. Wheeling–Pittsburgh Steel Corp.*, 648 F.2d 118, 124 (3d Cir.1981). Although there is no universal definition of "abuse," one court has required a showing that there has been wrongful conduct by the government, some improper purpose by the government, or that the subpoena is intended solely to serve purposes outside of the purview of the jurisdiction of the agency. *E.E.O.C. v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 788 (7th Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984). The Bank has alleged no wrongful conduct or improper purpose, and we have decided that the EEOC has jurisdiction to

---

**6.** At oral argument, counsel for the Bank lamented that "the employer isn't getting what it bargained for" in signing the release. Transcript of Oral Argument at 15. This argument was not pursued on that occasion or in the briefs. In light of our decision not to entertain affirmative defenses, we do not address the argument today.

pursue the investigation. Therefore, enforcement of the subpoena is proper and will not abuse this court's process.

4. Extension of the Statute of Limitations

In its application for enforcement of the subpoena, the EEOC asks that we toll the statute of limitations from the date the Bank refused to comply with the subpoena, May 27, 1990, until the date the Bank produces the requested documents. Equitable tolling of the statute of limitations is consistent with the design and purpose of the ADEA. *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir.1978). The question is whether the facts, if accepted as true, are sufficient to establish an equitable basis for tolling. *E.E.O.C. v. Gladieux Refinery, Inc.*, 631 F.Supp. 927, 936 (N.D.Ind.1986). Here the Bank's refusal to comply with a valid subpoena stopped the EEOC's investigation of Sanborn's charge in its tracks. There is thus ample basis to toll the statute of limitations for the period between May 27, 1990 and the date the Bank produces the requested documents. "To find otherwise would allow a defendant to defeat a potentially meritorious action by refusing to comply with a valid subpoena." *Id.*

## IV. CONCLUSION

For the foregoing reasons, we conclude that the EEOC's subpoena is valid and enforceable. An appropriate order shall follow.