411 S.E.2d 702

**WEST VIRGINIA HUMAN RIGHTS COMMISSION, Plaintiff Below, Appellant,**

v.

**Charles MOORE, Executive Officer, National Bank of Commerce, Defendant Below, Appellee.**

**No. 20199.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Nov. 21, 1991.

---

Mario J. Palumbo, Paul R. Sheridan, Atty. General's Office, Charleston, for appellant.

Ricklin Brown, Elizabeth D. Harter, Bowles Rice McDavid Graff & Love, Charleston, for appellee.

McHUGH, Justice:

This case is before the Court upon the appeal of the West Virginia Human Rights Commission (the "Commission"). The appellee is Charles Moore, Executive Officer of the National Bank of Commerce (the "Bank"). The Commission is aggrieved by the December 3, 1990 order of the Circuit Court of Kanawha County, which granted the Bank's motion to quash the Commission's subpoena duces tecum.

I

Kenneth E. McKnight was employed by the Bank from August, 1977, until June 6, 1986. McKnight, who is black, was employed by the Bank first as a maintenance operator, and later as a parking lot attendant.

On June 6, 1986, McKnight was instructed by his immediate supervisor, the appellee Moore, to go to Moore's office, where he was met by Moore, Willard Ross, the property manager of the Bank, and John Neuner, a senior vice-president of the Bank. McKnight was told that his employment was being terminated.

Pursuant to the termination, McKnight was given an "Employment Separation Agreement," which is a standard document used by the Bank when an employee leaves for any reason. Under the agreement, McKnight was given $2,067.20 as severance pay, and $516.80 pursuant to a paragraph in the agreement which released the Bank from any claim the employee may later have as a result of the employment relationship. The $516.80 represented consideration for execution of the release.

At the hearing on the motion to quash the subpoena, Moore testified that he told McKnight that the agreement did not have to be signed that day and that McKnight could even see a lawyer first. Moore also testified that the reason for McKnight's termination was that the Bank was "downsizing" its staff. Moore testified that about thirty employees were laid off with McKnight.

McKnight testified that he felt intimidated in the room where he signed the agreement, that he was in a hurry to leave, that he did not know what the specific sums represented, and that it was his understanding that he would not get his severance pay if he did not sign the agreement. McKnight also signed other documents at that time, the contents of which he was then and now unaware.

One other maintenance operator who was laid off with McKnight was white and

two who were not laid off were white. On August 28, 1986, McKnight filed a complaint with the Commission, alleging that the Bank had engaged in unlawful race discrimination by terminating his employment.

Pursuant to *W.Va.Code,* 5–11–10 [1987], the Commission proceeded to investigate McKnight's complaint.[1] As part of this investigation, the Commission sought documents from the Bank which are related to McKnight's employment termination. The Bank refused to produce such documents. Consequently, the Commission issued a subpoena duces tecum pursuant to *W.Va. Code,* 5–11–8(d)(1) [1989].[2]

The Bank refused to comply with the subpoena issued by the Commission on the ground that McKnight had executed a valid release of all claims arising out of his employment termination. The circuit court granted the Bank's motion to quash the subpoena duces tecum.

## II

The narrow issue in this case is whether a subpoena duces tecum, issued to an employer by the Human Rights Commission pursuant to *W.Va.Code,* 5–11–8(d)(1), as amended, is enforceable where the complainant/employee has signed a release waiving all claims against the employer which might arise out of the employment relationship.

*W.Va.Code,* 5–11–8 [1989] provides, in pertinent part:

The commission is hereby authorized and empowered:

. . . .

(d) To hold and conduct public and private hearings . . . and during the investigation of any formal complaint before the commission relating to employment, . . . to:

(1) Issue subpoenas and subpoenas duces tecum upon the approval of the executive director or the chairperson of the commission[.]

This Court has never spoken to this issue. However, as both parties readily acknowledge, federal administrative law may provide guidance in resolving this question.

In *Equal Employment Opportunity Commission v. American Express Centurion Bank,* 758 F.Supp. 217 (D.Del.1991), the federal district court addressed a case with a similar factual scenario to that of this case. There, the complainant's employment was terminated by a bank. Pursuant to this termination, the employee signed a release of all claims against the bank, including claims arising under the Age Discrimination in Employment Act (ADEA). The employee then filed a claim with the Equal Employment Opportunity Commission (EEOC) under the ADEA. The EEOC, as part of its investigation, issued a subpoena duces tecum to the bank. However, the bank, based upon the employee's waiver of claims, refused to comply with the subpoena. The federal district court held that a release of claims does not abrogate the power of the EEOC to investigate claims. In so holding, the court pointed out that "a party may not defeat an agency's authority to investigate by raising what could be a defense if the agency subsequently decides to bring an action against the party." 758 F.Supp. at 222.

◼ Similarly, in this case, the Commission contends that because it has *not even had a chance to make a "probable cause" determination* to decide whether or not to bring an action, then the Bank cannot defeat its authority to issue a subpoena duces tecum.[3]

1. *W.Va.Code,* 5–11–10 was amended in 1987. At the time of the Commission's initial investigation of the complaint in this case, the 1971 version of that statute was in effect. However, the 1987 amendment merely changed the time limit for filing a complaint with the Commission. Therefore, the 1987 amendment has no bearing on this case.

2. *W.Va.Code,* 5–11–8 was last amended in 1989. At the time of the pertinent events in this case, the 1981 version of that statute was in effect. However, the changes resulting from the 1989 amendment have no bearing on this case.

3. Before the Commission may take action to eliminate an unlawful discriminatory practice, it must first make a determination of probable

The Bank attempts to distinguish the cases cited by the Commission, asserting that in those cases, the courts were required to become entangled in the merits. The Bank contends that the Commission confuses the "merits of a defense" with the "validity of a complaint," and that the *only* proper inquiry is whether the complaint is valid. Therefore, in this case, the Bank maintains that the Commission's investigation ends upon its discovery of the release.

The Bank, in support of its position, cites the Fourth Circuit's decision in *Equal Employment Opportunity Commission v. Ocean City Police Department*, 820 F.2d 1378 (4th Cir.1987).[4] The court in that case held that an EEOC subpoena could be denied on the ground that the underlying race discrimination charge is barred due to untimeliness. Therefore, the Bank in this case reasons that the court *may* look to the validity of the claim in denying the subpoena. *See also Equal Employment Opportunity Commission v. American & Effird Mills, Inc.*, 758 F.Supp. 338 (W.D.N.C.1991) (holding same).

However, we believe that the court's holding in the *Ocean City Police Department* case is distinguishable. In that case, the untimeliness of the complainant's race discrimination claim was *undisputed.* In this case, whether or not the release was valid, that is, knowingly and voluntarily signed, is an issue which is in dispute, and the Commission has been denied the opportunity to explore this fact before it can determine whether probable cause even exists.[5]

This state's Administrative Procedures Act provides that an agency may have the power to issue subpoenas.

> For the purpose of conducting a hearing in any contested case, any agency which now has or may be hereafter *expressly granted by statute* the power to issue subpoenas or subpoenas duces tecum or any member of the body which comprises such agency may exercise such power in the name of the agency.... Under no circumstances shall this chapter be construed as granting the power to issue subpoenas or subpoenas duces tecum to any agency or to any member of the body of any agency which does not now by statute expressly have such power.

*W.Va.Code*, 29A–5–1(b) [1964] (emphasis supplied).

Moreover, *W.Va.Code*, 29A–7–1 [1964] provides: "No process, requirement of a report, inspection, or other investigative act or demand shall be issued, made, or enforced in any manner or for any purpose *except as authorized by law.*"

■ The state Administrative Procedures Act does not, in and of itself, grant the authority to agencies to issue subpoenas. Rather, such authority is recognized *if* it is expressly granted by statute. *See* A. Neely, *Administrative Law in West Virginia* § 5.16 (1982).

(emphasis supplied)

cause. *W.Va.Code*, 5–11–10 [1987] provides, in part:

> Any individual claiming to be aggrieved by an alleged unlawful discriminatory practice shall make, sign and file with the commission a verified complaint[.] ...
>
> After the filing of any complaint, or whenever there is reason to believe that an unlawful discriminatory practice has been committed, the commission shall make a prompt investigation in connection therewith.
>
> ... If it shall be determined after such investigation or meeting that *probable cause* exists for substantiating the allegations of the complaint, the commission shall immediately endeavor to eliminate the unlawful discriminatory practices complained of by conference, conciliation and persuasion.

4. The decision in *Ocean City Police Department* was vacated by the United States Supreme Court, 486 U.S. 1019, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988), on the issue of what constitutes timeliness and when the agency's investigation terminates. It does not address the subpoena issue directly.

5. *Cf. Equal Employment Opportunity Commission v. Tempel Steel Co.*, 814 F.2d 482 (7th Cir.1987) (*alleged* untimeliness of claim does not bar enforcement of EEOC's subpoena power). *Ocean City Police Department* notes that *Tempel Steel* does not stand for the proposition that timeliness may never be a defense. 820 F.2d at 1381 n. 7.

Obviously, in this case, *W. Va. Code*, 5–11–8(d)(1) [1989] *does* expressly grant such authority.[6]

*W. Va. Code*, 5–11–15 [1967] provides that the West Virginia Human Rights Act, *W. Va. Code*, 5–11–1 to 5–11–19, as amended, "shall be liberally construed to accomplish its objectives and purposes." "This construction applies to both its substantive and procedural provisions, and is consonant with this Court's view that administrative proceedings should not be constrained by undue technicalities." Syl. pt. 1, in part, *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990).

Accordingly, the issue in this case must be addressed with this principle in mind. The federal cases that have addressed this issue make it clear that agencies that are vested with subpoena power must have latitude in pursuing investigations in furtherance of their objectives and purposes. The Human Rights Commission is an agency that is expressly vested with such authority.

As stated previously, in this case, the Commission has not yet even had the opportunity to make a determination of "probable cause." *See supra* note 3. It is alleged that at the time McKnight signed the release he did not realize that the employees who were retained by the Bank were white. Consequently, he may not have known that he was relinquishing his right to file a complaint with the Human Rights Commission based upon race discrimination. This is not to imply that McKnight would necessarily have a valid claim of race discrimination. That issue is not before us. Rather, the Commission's investigatory function has been impeded by the Bank's refusal to comply with the sub-

poena duces tecum and the circuit court's subsequent order quashing that subpoena.

In *Equal Employment Opportunity Commission v. Children's Hospital Medical Center*, 719 F.2d 1426 (9th Cir.1983), the Ninth Circuit set forth a three-part test which must be met before a court should enforce a subpoena issued by a federal agency: "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." 719 F.2d at 1428.

■ We believe that this test should also be utilized in determining whether a subpoena issued by the Human Rights Commission should be enforced. As noted previously, *W. Va. Code*, 5–11–8(d)(1) [1989] expressly grants the Commission the authority to issue a subpoena, and there is no dispute in this case as to whether the Commission complied with procedural requirements. Clearly, the documents sought by the Commission in this case were relevant and material to its investigation of the complaint.[7] The circuit court in this case based its ruling solely upon the fact that the complainant had signed a release. The circuit court's order completely overlooked the remedial nature of the Human Rights Act and allowed the release to hinder the Commission's statutory duty to investigate the claim which was before it.

In reaching this conclusion, we believe, as the court in *American Express Centurion Bank*, discussed earlier, stated, that the Bank may not defeat the Commission's authority to investigate by raising what could be a defense if the Commission subsequently decides to bring an action

---

6. *Cf. W. Va. Code*, 9–5–8a [1982] (granting Division of Human Services power to *apply to circuit court* for issuance of subpoena); *see* A. Neely, *Administrative Law in West Virginia* § 5.16, at 110 n. 39 (Supp.1983).

    *W. Va. Code*, 29A–5–1(b) [1964] also provides that relief may be granted with respect to a subpoena duces tecum under the *West Virginia Rules of Civil Procedure*. Under Rule 45(b)(1) of those *Rules*, the trial court may quash a subpoena "if it is *unreasonable and oppressive*[.]" (emphasis supplied) In this case, however, the issue does not involve the "unreason-

able and oppressive" nature of the subpoena duces tecum. Rather, the issue involves the enforceability of a subpoena duces tecum issued by the Human Rights Commission where the complainant has allegedly released his claim.

7. The subpoena duces tecum issued by the Commission sought documents relating to the personnel file of McKnight; policies on promotions, transfers, and separations; and documents reflecting promotions, disciplinary actions, separations, and affirmative action plans only from July 1, 1985 through June 30, 1986.

**188**

against the Bank. The *American Express Centurion Bank* court, in relying on *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943), restated the holding of the United States Supreme Court, that "it is inappropriate to interfere with an administrative investigation by exploring substantive defenses to a later adversarial proceeding." 758 F.Supp. at 223.

■ Accordingly, we hold that a subpoena duces tecum, issued to an employer by the West Virginia Human Rights Commission is enforceable even where the complainant/employee has signed a release waiving all claims against the employer which might arise out of the employment relationship, because the legislature has granted the Commission the authority to investigate alleged discriminatory practices pursuant to *W. Va. Code,* 5–11–10, as amended, and the authority to issue a subpoena duces tecum pursuant to *W. Va.*

*Code,* 5–11–8(d)(1), as amended. Additionally, the procedural requirements of issuing such a subpoena duces tecum must have been met and the evidence sought by the Commission must be relevant and material to the investigation.[8]

Therefore, the circuit court's order in this case, granting the Bank's motion to quash, is reversed.[9]

Reversed.

BROTHERTON, J., deeming himself disqualified, did not participate in the consideration or decision of this case.

CAPLAN, J., was appointed to participate.

---

**8.** We do not mean to imply that relief from complying with a subpoena duces tecum may not be sought under the provisions of *W. Va. Code,* 29A–5–1(b) [1964] and Rule 45(b) of the *West Virginia Rules of Civil Procedure.* Our holding does nothing to abrogate the power of a trial court to quash or modify a subpoena if it is unreasonable and oppressive. Rather, we are merely holding that a release, such as the one signed in this case, may not be the ground for granting a motion to quash under similar circumstances.

**9.** We note that the Commission has included in the record of this case *proposed* legislative rules.

These rules would prohibit a release, such as the one executed in this case, from affecting the Commission's power to investigate and subsequently bring an action. These rules would also require an agreement to release a claim to make specific reference to a claim arising under the Human Rights Act before an employee can waive such an action. However, these proposed rules have no bearing on our decision in this case because they were neither in effect at the time of the pertinent events, nor were they in effect at the time of our decision.